IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

TF-HARBOR, LLC,                      §
                                     §
                    Plaintiff,       §
                                     §   Civil Action No. 3:13-CV-4318-D
VS.                                  §
                                     §
CITY OF ROCKWALL, TEXAS, et al.,     §
                                     §
                    Defendants.      §

MEMORANDUM OPINION
AND ORDER

In this suit alleging federal-law and state-law claims based on the enactment of a

municipal ordinance regulating the development of commercial real property, and on related

conduct, the court must decide whether the plaintiff has standing to bring its federal-law

claims. Concluding that it does not, the court dismisses the federal-law claims for lack of

subject matter jurisdiction, holds in the alternative that the plaintiff has failed to state federal-

law claims on which relief can be granted, declines to reach the pendent state-law claims, and

denies the plaintiff's motion for a preliminary injunction without prejudice to its seeking such

relief in state court.

I

A

Plaintiff TF-Harbor, LLC ("TF-Harbor") owns a commercial shopping center in

Rockwall, Texas (the "Shopping Center").[1]  The Shopping Center is located on an area that is currently designated as "Lot 5" under city zoning laws.  The adjacent property, which TF-Harbor does not own, is designated as "Lot 7."  TF-Harbor did not acquire Lot 5 until 2010, but the pertinent factual background of this case begins in 2003.

In October 2003 CNMK Texas Properties, Ltd. ("CNMK") entered into a lease agreement—the "Cinemark Lease"—with Mariah Bay Development, Inc. ("MBD"), an entity owned by Robert Whittle ("Whittle").  The Cinemark Lease was amended several times between June 2004 and December 2006, and it included several provisions that gave CNMK signage, parking, and pedestrian-access rights over the property.  CNMK operates a movie theater on the leased property under the trade name Cinemark ("the Cinemark theater").  The property on which the Cinemark theater is located is referred to as the "Cinemark property."

In July 2004 CNMK filed in the Rockwall County Property Records a document memorializing CNMK's rights under the Cinemark Lease.  This document, which TF-Harbor calls the "Memorandum of Lease," contained several provisions designed to ensure that development on, or adjacent to, the Cinemark property would not infringe CNMK's rights

---

[1]In deciding defendants' Fed. R. Civ. P. 12(b)(6) motions, the court construes the complaint in the light most favorable to TF-Harbor, accepts as true all well-pleaded factual allegations, and draws all reasonable inferences in TF-Harbor's favor.  *See, e.g., Lovick v. Ritemoney Ltd.*, 378 F.3d 433, 437 (5th Cir. 2004).  "The court's review [of a Rule 12(b)(6) motion] is limited to the complaint, any documents attached to the complaint, and any documents attached to the motion to dismiss that are central to the claim and referenced by the complaint."  *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).

under the Cinemark Lease.  In particular, the Memorandum of Lease expressly incorporates the Cinemark Lease in its entirety and explains that the Memorandum of Lease is intended to give constructive notice of CNMK's leasehold interests.  The Memorandum of Lease was filed within the historical chain of title for all properties relevant to this litigation, including Lot 7.

In 2010 MBD, along with various corporate entities owned by Whittle (collectively, the "Whittle entities"), filed for bankruptcy.  All of the property in Lots 5 and 7 was initially owned by one or more of the Whittle entities.  MBD was not able to confirm a plan of reorganization that would have enabled it to retain ownership of the Cinemark property. Credit Union Liquidity Services, LLC ("CULS") held a deed of trust on the Cinemark property and requested that the bankruptcy court lift the automatic stay to allow CULS to foreclose on the property.  The court granted the request, and in October 2010 a non-judicial foreclosure sale was conducted.  TF-Harbor, an affiliate of CULS, acquired the property immediately after the foreclosure sale.  The property that TF-Harbor acquired included the Cinemark property and portions of the parking area over which CNMK had certain usage rights. In connection with these transactions, TF-Harbor also inherited all leases at the Shopping Center, including the Cinemark Lease.  The Cinemark Lease imposes on TF-Harbor a duty to prevent interference with CNMK's leasehold rights.

During the 2010 bankruptcy proceedings, several Whittle entities attempted to transfer the ownership rights over Lot 7.  CULS, which was still an interested creditor at the time, had concerns that the transfers were fraudulent or preferential.  Several Whittle entities sought

- 3 -

permission from the bankruptcy court to settle their disputes regarding the transfers. The bankruptcy court conducted a mediation involving a group of interested parties, including Whittle, MBD, CULS, and TF-Harbor. After the mediation, the parties entered into a "Mediated Settlement Agreement." This agreement included several provisions designed to accommodate TF-Harbor's obligation to protect the rights of its tenants (including CNMK) to signage, parking, and pedestrian access extending to the adjacent property (now known as Lot 7). In particular, the parties agreed to the following: (1) they would re-plat the areas on the property where the majority of the Shopping Center's parking lot is located; (2) the relevant Whittle entities would transfer ownership rights over certain parking and other areas over to TF-Harbor free and clear of all liens, claims, and encumbrances; and (3) the parties would agree to cross-easements to preserve CNMK's signage, usage, and pedestrian-access rights, which extended beyond the boundaries of the property TF-Harbor already owned or would receive by way of the agreed-upon transfer.

As contemplated by the Mediated Settlement Agreement, the parties worked to re-plat the relevant properties, thereby designating Lots 5 and 7, and in December 2011 they filed the re-plat in the Rockwall County Property Records. The Whittle entities did not, however, honor the other provisions of the Mediated Settlement Agreement. They did not transfer the specified portions of parking on Lot 5 to TF-Harbor; they failed to execute a cross-easement that would have ensured TF-Harbor's signage, usage, and pedestrian-access rights on Lot 7; and, in June 2012, they sold all of the newly designated Lot 7 to defendant Rockwall Rental Properties, L.P. ("Rockwall Rental") without first securing a cross-easement commitment

from Rockwall Rental.

After TF-Harbor and CULS learned of these matters, they demanded that the Whittle entities resolve the complications caused by the transfer of the property to Rockwall Rental. The parties could not resolve their dispute, TF-Harbor successfully petitioned the bankruptcy court to reinstate proceedings, and the bankruptcy court granted TF-Harbor's motion to compel compliance with the Mediated Settlement Agreement. By special warranty deed dated April 1, 2013, the Whittle entities transferred to TF-Harbor the balance of the parking area on Lot 5 that TF-Harbor did not already own. On the same day, all of the interested parties, including Rockwall Rental, executed a contractual agreement to resolve signage, usage, and pedestrian-access rights at the abutting properties.

This new agreement—the Non-Exclusive Reciprocal Easement Agreement (the "REA")—subordinates Rockwall Rental's ownership rights in Lot 7 to CNMK's ongoing leasehold rights. In particular, the REA establishes overlapping usage and access rights among TF-Harbor, Rockwall Rental, and a third entity known as Bella Harbor Hotel Venture regarding issues such as parking, utility, and pylon sign easements. The REA took effect on April 1, 2013, and it was filed in the Rockwall County Property Records in June 2013.

Around the same time, Rockwall Rental began lobbying defendant City of Rockwall ("the City") to pass a municipal ordinance that would apply to Lot 7. On June 17, 2013 the City enacted Ordinance 13-16 ("the Ordinance"). One of the Ordinance's provisions acknowledges that it was passed specifically as an accommodation to Rockwall Rental. The Ordinance approves a development plan submitted by Rockwall Rental for commercial

- 5 -

development on the property.  According to TF-Harbor's complaint, the approved plan "resurrects" development options that are foreclosed by the REA, the Cinemark Lease, and the Memorandum of Lease.  In particular, the plan contemplates development that would (1) obstruct the Cinemark sign facing the highway, (2) impermissibly cover portions of the existing parking area, (3) impermissibly re-configure parking available to Cinemark customers, (4) impermissibly exclude CNMK's customers from new parking proposed under the plan, (5) eliminate a pedestrian access way to the theater, (6) fail to provide sufficient parking to satisfy contractual and municipal requirements, and (7) alter the primary roadway bordering the theater, which would disrupt the free flow of traffic.

B

TF-Harbor brings this action against the City and Rockwall Rental for declaratory and injunctive relief and money damages.  It alleges the following claims under federal law[2]: Count I alleges that the Ordinance is unconstitutional under the Contracts Clause of the United States Constitution because it impairs TF-Harbor's contractual obligations to CNMK, and Count II alleges that the Ordinance is unconstitutionally vague under the Due Process Clause of the Fourteenth Amendment because it is a regulatory statute that fails to give a person of ordinary intelligence a reasonable opportunity to know what is prohibited and fails

---

[2]It is not clear whether the complaint asserts the federal-law claims against Rockwall Rental as well.  The prayers for relief for Counts I and II both mention Rockwall Rental, even though the relevant allegations refer to the City's enactment of the Ordinance.  In addition, Rockwall Rental filed a separate motion to dismiss, but the motion adopts and incorporates the City's motion to dismiss by reference and requests that the federal-law claims be dismissed for the reasons set out by the City.  *See* D. Rockwall Rental 2/17/2014 Mot. 4-5.

to provide standards by which the Ordinance will be applied.  It alleges the following claims under state law: Count III alleges that the Ordinance is void and unenforceable under Texas law because the "penalty" and "offense" provisions of the Ordinance fail to comport with various state penal laws; Count IV alleges that Rockwall Rental is liable for attempting to violate covenants set forth in the Cinemark Lease and made "restrictive covenants" by operation of the Memorandum of Lease and the REA; and Count V alleges that Rockwall Rental is liable for breach of contract because it is in violation of the REA.

The City moves to dismiss under Fed. R. Civ. P. 12(b)(1) and 12(b)(6), contending that TF-Harbor does not have standing to pursue its federal-law claims and, even if it does, both federal-law causes of action fail to state a claim on which relief can be granted. Rockwall Rental moves to dismiss the federal-law claims under Rule 12(b)(1) and 12(b)(6) on the same grounds as does the City, and it maintains that, if the federal-law claims are dismissed, the court should decline to exercise supplemental jurisdiction over the pendent state-law claims.  TF-Harbor opposes both motions.

TF-Harbor separately moves for a preliminary injunction, which defendants oppose.[3]

---

[3]The court is deciding TF-Harbor's preliminary injunction motion on the papers, without conducting an evidentiary hearing, as permitted by Rule 43(c).  *See, e.g., Wireless Agents, L.L.C. v. Sony Ericsson Mobile Commc'ns AB*, 390 F.Supp.2d 532, 533 n.1 (N.D. Tex. 2005) (Fitzwater, J.) (addressing former Rule 43(e)), *aff'd*, 189 Fed. Appx. 965 (Fed. Cir. 2006).  Pursuant to Rule 52(a), the court sets out its findings of fact and conclusions of law in this memorandum opinion and order.

II

"Federal courts are courts of limited jurisdiction, and absent jurisdiction conferred by statute, lack the power to adjudicate claims." *Stockman v. Fed. Election Comm'n*, 138 F.3d 144, 151 (5th Cir. 1998). "The burden of proof for a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. Accordingly, the plaintiff constantly bears the burden of proof that jurisdiction does in fact exist." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (citations omitted).

"In deciding a Rule 12(b)(6) motion to dismiss, the court evaluates the sufficiency of [the plaintiff's] . . . complaint by 'accepting all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff.'" *Bramlett v. Med. Protective Co. of Fort Wayne, Ind.*, 855 F.Supp.2d 615, 618 (N.D. Tex. 2012) (Fitzwater, C.J.) (quoting *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks and alteration omitted)). To survive defendants' motion, TF-Harbor must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*; *see also Twombly*, 550 U.S. at 555 ("Factual allegations must be enough to raise a right to relief above the speculative level[.]"). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the

- 8 -

complaint has alleged—but it has not 'shown'—'that the pleader is entitled to relief.'" *Iqbal*, 556 U.S. at 679 (quoting Rule 8(a)(2)) (alteration omitted).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* at 678 (citation omitted).

III

Defendants move under Rule 12(b)(1) to dismiss Counts I and II on the ground that TF-Harbor lacks standing to pursue these claims.

A

"Standing is an issue of subject matter jurisdiction, and thus can be contested by a Rule 12(b)(1) motion to dismiss." *Lee v. Verizon Commc'ns Inc.*, 954 F.Supp.2d 486, 496 (N.D. Tex. 2013) (Fitzwater, C.J.) (citing *Cobb v. Cent. States*, 461 F.3d 632, 635 (5th Cir. 2006)).  A Rule 12(b)(1) motion can mount either a facial or factual challenge.  *See Hunter v. Branch Banking & Trust Co.*, 2013 WL 607151, at *2 (N.D. Tex. Feb. 19, 2013) (Fitzwater, C.J.) (citing *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir. May 1981)).  When a party makes a Rule 12(b)(1) motion without including evidence, the challenge to subject matter jurisdiction is facial.  *Id.*  The court assesses a facial challenge as it does a Rule 12(b)(6) motion in that it "looks only at the sufficiency of the allegations in the pleading and assumes them to be true.  If the allegations are sufficient to allege jurisdiction, the court must deny the motion." *Id.* at *2 (citing *Paterson*, 644 F.2d at 523).  If, however, a party mounts a factual attack on subject matter jurisdiction by submitting evidence, such as affidavits or testimony,

- 9 -

> the court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case. No presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims.

*Id.* (quoting *Williamson v. Tucker*, 645 F.2d 404, 413 (5th Cir. May 1981)) (internal quotation marks omitted).  In a factual challenge, the plaintiff, as the party seeking to invoke jurisdiction, must prove subject matter jurisdiction by a preponderance of the evidence.  *Id.* (citing *Paterson*, 644 F.2d at 523).  While normally a court can decide a factual challenge at the preliminary stage of a Rule 12(b)(1) motion, if the factual findings regarding subject matter jurisdiction are intertwined with the merits of a claim, the court must "assume jurisdiction and decide the case on the merits."  *Worldwide Parking, Inc. v. New Orleans City*, 123 Fed. Appx. 606, 609 (5th Cir. 2005) (citing *Bell v. Hood*, 327 U.S. 678, 682 (1946)); *Clark v. Tarrant Cnty., Tex.*, 798 F.2d 736, 741-42 (5th Cir. 1986).  In that circumstance, the defendant can proceed either by moving to dismiss under Rule 12(b)(6) or by moving for summary judgment.  *See Worldwide Parking*, 123 Fed. Appx. at 609 & n.4 (citing *Williamson*, 645 F.2d at 415-16).  "This rule provides protection to plaintiffs so that factual disputes affecting the merits of claims can be addressed in accordance with the Federal Rules and the Seventh Amendment right to a jury trial."  *Lee*, 954 F.Supp.2d at 497.

In this case, the City and Rockwall Rental are making a facial challenge to subject matter jurisdiction.  Accordingly, the court looks only at the sufficiency of the allegations in the complaint and assumes that they are true.  The court also considers the text of the Ordinance because TF-Harbor has attached a copy to its complaint.  *See, e.g., Lone Star*

*Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010); *see also*
Rule10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the
pleading for all purposes.").

B

Standing consists of two strands: constitutional standing and prudential standing. *See
Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11 (2004), *abrogated on other grounds
by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, ___ U.S. ___, 134 S. Ct. 1377
(2014); *see also Cibolo Waste, Inc. v. City of San Antonio*, 718 F.3d 469, 473 (5th Cir. 2013).
Constitutional standing is an "irreducible constitutional minimum" under Article III's
case-or-controversy requirement, *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992),
and it requires an injury that is "concrete, particularized, and actual or imminent; fairly
traceable to the challenged action; and redressable by a favorable ruling." *Clapper v.
Amnesty Int'l USA*, ___ U.S. ___, 133 S. Ct. 1138, 1147 (2013) (citation omitted). "[T]he
injury must affect the plaintiff in a personal and individual way." *Lujan*, 504 U.S. at 560 n.1.

Prudential standing, by contrast, does not emanate from the Constitution, and it
instead "embodies 'judicially self-imposed limits on the exercise of federal jurisdiction.'"
*Cibolo Waste*, 718 F.3d at 474 (quoting *Elk Grove*, 542 U.S. at 11).  The doctrine asks

> whether a plaintiff's grievance arguably falls within the zone of
> interests protected by the statutory provision invoked in the suit,
> whether the complaint raises abstract questions or a generalized
> grievance more properly addressed by the legislative branch,
> and whether the plaintiff is asserting his or her own legal rights
> and interests rather than the legal rights and interests of third
> parties.

- 11 -

*Ass'n of Cmty. Orgs. for Reform Now v. Fowler*, 178 F.3d 350, 363 (5th Cir. 1999).

Defendants argue that TF-Harbor has neither constitutional nor prudential standing to pursue its federal-law claims. They maintain that TF-Harbor lacks constitutional standing to bring its Contracts Clause claim because (1) TF-Harbor's alleged injury is neither concrete and particularized nor actual or imminent; (2) the alleged injury is not fairly traceable to the City's passage of the Ordinance; and (3) the alleged injury is not redressable by a favorable ruling by this court. They posit that TF-Harbor lacks constitutional standing to pursue its Due Process Clause claim because (1) it is not a potential target or violator of the Ordinance since the zoning law only regulates Lot 7, and TF-Harbor does not own any of that property; and (2) because the City has not actually approved a more detailed development plan that would be required before construction can begin on Lot 7. Defendants also contend that, even if TF-Harbor has constitutional standing, it lacks prudential standing because it is essentially asserting the rights or interests of a third party—CNMK. TF-Harbor responds that defendants' challenges to standing are inextricably intertwined with the merits of the claims, and that it has constitutional and prudential standing to assert both claims because the complaint pleads facts that establish each element.

C

The court need only consider whether TF-Harbor has sufficiently pleaded the requirement of constitutional standing that its injury is fairly traceable to the challenged action by the City. TF-Harbor alleges that it will sustain economic losses if CNMK terminates the Cinemark Lease or decides not to renew the lease. It maintains that this injury

is caused by the Ordinance, because it approves a development plan that Rockwall Rental submitted, and, if the development occurs according to the plan, this will infringe on CNMK's leasehold interests, which extend to Lot 7.  Under this reasoning, the Ordinance would cause TF-Harbor to violate its duty to prevent interference with CNMK's leasehold rights and to default under the terms of the Cinemark Lease, leading to the possibility that CNMK might terminate the Cinemark Lease or choose not to renew it.  If CNMK terminated the lease or opted not to renew it, TF-Harbor would suffer "cascading economic harms."  P. Br. 2.  In sum, TF-Harbor's alleged injury is the risk of defaulting under the terms of the Cinemark Lease, and the consequences to TF-Harbor of such a default.

To understand why TF-Harbor has failed to adequately plead constitutional standing, it is important to focus on what the Ordinance does and does not do.  The Ordinance approves an early-stage development plan submitted on behalf of Rockwall Rental and effectively amends prior zoning ordinances and the City's Unified Development Code (the "Code") to allow the proposed development, assuming other requirements are met.  It incorporates a one-page visual rendering of Rockwall Rental's proposed development scheme and states that development occurring on the property "shall generally be in accordance with" the proposed plan as depicted in the rendering.  Compl. Ex. 28 at 1, § 2. The Ordinance also provides that the development must comply with other regulations set forth in other specified zoning ordinances and with the Code, and it enumerates procedural requirements that must be satisfied during later stages of the development process.  For example, the developer must submit a more detailed site plan, must seek approval for

- 13 -

construction designs from the Architectural Review Board, and must apply for a building permit before beginning construction.  The Ordinance also establishes a penalty for non-compliance: any person, firm, or corporation violating the regulation will be deemed guilty of a misdemeanor and subject to a fine not to exceed $2,000 for each offense.

Equally important for standing purposes is an understanding of what the Ordinance does *not* do.  It neither mandates that commercial development take place on Lot 7 nor creates an incentive for commercial development on the property.  The Ordinance does not change the nature of the regulation in place, since Lot 7 was zoned for extensive commercial development before the Ordinance was passed.  After the Ordinance took effect, Lot 7 is still zoned for extensive commercial development.  And the Ordinance does not of itself abrogate or otherwise modify CNMK's leasehold rights, which extend to parts of Lot 7, as reflected in the Cinemark Lease, Memorandum of Lease, and the REA.

Under these circumstances, TF-Harbor's alleged injury—exposure to a risk of default under the Cinemark Lease and to the loss of CNMK's business if Rockwall Rental develops Lot 7 in ways that infringe CNMK's leasehold interests—is not fairly traceable to the challenged action: the enactment of the Ordinance.  Although the Ordinance approves an early-stage development plan submitted by Rockwall Rental, it does not require or encourage commercial development on Lot 7, much less require that the commercial development occur in particular ways that infringe on CNMK's leasehold rights.  TF-Harbor's injury, if any, is therefore fairly traceable to the potential actions of Rockwall Rental in developing Lot 7—not to the Ordinance itself, since Rockwall Rental can pursue development plans that do

- 14 -

not infringe Cinemark's leasehold interests.

Moreover, the Ordinance does not abrogate or otherwise modify any of the restrictive covenants or contractual obligations to which Rockwall Rental agreed in the REA. A long line of Texas case law clearly establishes this principle. *See, e.g., City of Gatesville v. Powell*, 500 S.W.2d 581, 583 (Tex. Civ. App. 1973, writ ref'd n.r.e.) ("Thus a zoning ordinance cannot override or impair a restriction limiting the use of property, nor can it relieve the land from such restriction[.]"); *Morton v. Sayles*, 304 S.W.2d 759, 763 (Tex. Civ. App. 1957, writ ref'd n.r.e.) ("The fact that the City may have zoned the property in question as business property cannot override the covenants in the deed . . . and the agreement entered into by the parties . . . restricting the lots to residential use."); *Farmer v. Thompson*, 289 S.W.2d 351, 355 (Tex. Civ. App. 1956, writ ref'd n.r.e.) ("The power of a city to zone does not override covenants in existence at the time the zoning ordinance is passed."); *Spencer v. Maverick*, 146 S.W.2d 819, 825 (Tex. Civ. App. 1941, no writ) ("The general restriction against business use in the deeds to Lot 6 and the two specific restrictions against business use in deeds to Lots 6 and 7 . . . antedate the [zoning] ordinances, and we hold . . . that the power of the city to zone cannot override restrictive covenants in existence at the time the zoning ordinance is passed.").

TF-Harbor concedes that its injury is only indirectly caused by the Ordinance, but it argues that the Supreme Court has long recognized that an indirect injury satisfies the causation element of standing. The court agrees with this contention to the limited extent that the indirectness of an injury does not necessarily foreclose a finding that the injury is

- 15 -

fairly traceable to the challenged action. *See Warth v. Seldin*, 422 U.S. 490, 504 (1975) ("The fact that the harm to [plaintiffs] may have resulted indirectly does not in itself preclude standing."). But the court disagrees with TF-Harbor's ultimate position because an indirect injury does not always satisfy the fairly traceable requirement, and, under the facts alleged in the complaint, TF-Harbor's injury is not fairly traceable to the enactment of the Ordinance.

The court recognizes that the fairly traceable element of standing doctrine imposes a causation standard that is lower than the tort standard of proximate causation. *See League of United Latin Am. Citizens, Dist. 19 v. City of Boerne*, 659 F.3d 421, 431 (5th Cir. 2011); *see also, e.g., Rothstein v. UBS AG*, 708 F.3d 82, 91-92 (2d Cir. 2013) (collecting cases and discussing difference between "fairly traceable" standard and proximate causation). The fact that there is an intervening cause of the plaintiff's injury does not necessarily prevent it from demonstrating that its alleged injury is fairly traceable to the defendant's act. *See, e.g., Rothstein*, 708 F.3d at 92. And the fairly traceable element does not require that the defendant's challenged action be the last act in the chain of events leading to the plaintiff's injury. *See Bennett v. Spear*, 520 U.S. 154, 168-69 (1997) ("This wrongly equates injury 'fairly traceable' to the defendant with injury as to which the defendant's actions are the very last step in the chain of causation."). Even so, a plaintiff cannot satisfy the fairly traceable element where its injury is caused, not by the defendant's challenged action, but by an "independent action of some third party not before the court." *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41-42 (1976); *see also Lujan*, 504 U.S. at 560-61; *Sanchez v. R.G.L.*, 743 F.3d 945, 952-53 (5th Cir. 2014). In situations where there is an intervening

- 16 -

cause of the plaintiff's injury, courts examine whether the defendant's actions had a "determinative or coercive effect upon the action of [the third party]." *Bennett*, 520 U.S. at 169. For example, courts consider whether the defendant has created an "incentive structure to which the intervening third party, who directly causes the injury, is responding." *Wilderness Soc. v. Griles*, 824 F.2d 4, 17 (D.C. Cir. 1987). A plaintiff can typically satisfy the fairly traceable element "[i]f the third party's conduct is sufficiently dependent upon the incentives provided by the defendant's action." *See id.*; *cf. Sierra Club v. Glickman*, 156 F.3d 606, 614-15 (5th Cir. 1998) (holding that plaintiff satisfied causation standard where defendant's decision had substantial effect on third-party farmers' irrigation decisions). But in circumstances like the present case, where the third party's conduct is not sufficiently dependent on the challenged action, courts generally hold that the plaintiff has not satisfied the fairly traceable element.

*Von Aulock v. Smith*, 720 F.2d 176 (D.C. Cir. 1983), is instructive. In *Von Aulock* a group of employees sued the Equal Employment Opportunity Commission ("EEOC"), alleging that the EEOC adopted an interpretative regulation that authorized the plaintiffs' employers to maintain pension plans that violated the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq*. *Von Aulock*, 720 F.2d at 176-77. The court held that the plaintiffs' injury was not fairly traceable to the EEOC's adoption of the interpretative regulation. *Id.* at 177. It reasoned that the employers' actions were the intervening cause of the plaintiffs' alleged injury because they, not the EEOC, created and maintained the injury-causing pension plans. *Id.* at 181 ("Upon assessing the likely effect . . . of the absence of the

Interpretative Bulletin, we conclude that [plaintiffs'] injury is the result of their employers' independent action and therefore is not fairly traceable to the Bulletin.").  In particular, the court emphasized that the employers would have adopted the pension plans regardless whether the EEOC promulgated the interpretative regulation being challenged.  *See id.* at 181-82.  The court rejected the plaintiffs' position that they could establish standing by pleading that the EEOC's interpretative regulation "authorized" the pension plans.

*Von Aulock* illustrates the principle that an alleged injury is not fairly traceable to a defendant's challenged action when that action merely makes it possible for a third party to take an action but neither requires nor encourages that action.  This principle explains why, for example, courts recognize that a plaintiff has standing to challenge a defendant's action when that action creates an incentive that encourages the third party to take the injury-causing act.  In this situation, the third party's conduct is considered "sufficiently dependent upon the incentives provided by the defendant's action," such that the plaintiff's injury is "fairly traceable" to the challenged action, even though the defendant's action is *not* the proximate cause of the plaintiff's injury.  *See Griles*, 824 F.2d at 17.

But in the present case, as in *Von Aulock*, the actions of the third party—Rockwall Rental—are alleged to be the intervening cause of TF-Harbor's injury because it is Rockwall Rental who is threatening to develop Lot 7 in ways that infringe on CNMK's leasehold interests.  The City, like the EEOC who *authorized* the creation and maintenance of the challenged pension plans, has merely *approved* an Ordinance that enables Rockwall Rental to develop the property, subject to certain limitations and prerequisites.  The City has neither

required nor encouraged the commercial development, the Ordinance does not abrogate or

otherwise modify Rockwall Rental's duties to comply with restrictive covenants and its

contractual obligations, and the Ordinance does not justify or excuse Rockwall Rental's

breach of restrictive covenants or breach of contract.   The Ordinance merely makes it

*possible* for Rockwall Rental to take the injury-causing action.   TF-Harbor has not cited any

authority, and the court has found none, that suggests that merely enabling a third-party to

take independent action is sufficient to satisfy the fairly traceable element of standing

doctrine.[4]

The implications of TF-Harbor's position reinforce the court's conclusion.   If TF-

---

[4]TF-Harbor relies principally on *Rectory Park, L.C. v. City of Delray Beach*, 208 F.Supp.2d 1320 (S.D. Fla. 2002), but this reliance is misplaced.   In *Rectory Park* a city re-zoned a central business district to allow for greater population densities and taller buildings. *Id.* at 1323-24.   It solicited proposals to develop a mixed-use project on the re-zoned land. *Id.* at 1324.   The city zoning and planning board eventually adopted a proposal—submitted by a private developer—that provided for taking six lots from an adjacent land area that was zoned as a historic district.   *Id.*   A group of property owners with interests in the historic district sued the city and the private developer, alleging that the city's actions violated the Due Process Clause of the Fourteenth Amendment.   *Id.* at 1324, 1326.   The court held that the plaintiffs had standing to bring their claims, but it granted summary judgment to the defendants on all claims.   *Id.* at 1326-27, 1333.   As pertinent here, the court held that the plaintiffs' alleged injury was fairly traceable to the city's decision to grant conditional use permits for the mixed-use project.   *Id.* at 1327.

Unlike the plaintiffs in *Rectory Park*, TF-Harbor does not allege that the City's passage of the Ordinance harms property values on surrounding properties.   In fact, it concedes that the prior zoning ordinances zoned Lot 7 for extensive commercial development.   TF-Harbor's injury occurs only if Rockwall Rental decides to develop Lot 7 in ways that infringe on CNMK's leasehold rights, not from the enactment of the Ordinance alone.   Additionally, unlike the defendant in *Rectory Park*, the City has not encouraged the injury-causing act, because it has not solicited proposals for development plans that would cause the type of harm TF-Harbor alleges.   The Ordinance makes further development possible, but neither encourages nor mandates it.

Harbor's theory of standing were correct, a plaintiff alleging that it was injured by a private developer's breach of contract or breach of restrictive covenants would have standing to sue the municipality that passed the ordinance that merely made the injury-causing development possible. The court is aware of no authority embracing such an expansive view of standing in this type of case.[5]

Because TF-Harbor has not adequately pleaded that its alleged injury is fairly traceable to the enactment of the Ordinance, TF-Harbor lacks constitutional standing to assert its federal-law claims. Accordingly, the court dismisses TF-Harbor's Contracts Clause claim (Count I) and its Due Process Clause claim (Count II) for lack of subject matter jurisdiction.[6]

IV

The court now turns to defendants' alternative motions under Rule 12(b)(6) to dismiss TF-Harbor's Contracts Clause claim for failure to state a claim on which relief can be granted.[7]

---

[5]Nor does it make a difference that Rockwall Rental is a codefendant in this case. In *Simon* and its progeny, the Court referred to an "independent action of some third party *not before the court*." *See, e.g., Simon*, 426 U.S. at 42 (emphasis added). There is no indication in the case law, however, that the standing question turns on whether the third party is a party to the lawsuit as opposed to a party whose independent action caused the injury. The challenged act—passage of the Ordinance—is an act taken exclusively by the City.

[6]Because TF-Harbor lacks constitutional standing, the court does not reach the question whether TF-Harbor has prudential standing.

[7]The City argues that § 1983 does not provide a cause of action for such a claim. Because the court concludes that TF-Harbor has not stated a claim on which relief can be granted, it will assume *arguendo* that a claim alleging a violation of the Contracts Clause can be brought under § 1983.

Count I also invokes the Declaratory Judgment Act, 28 U.S.C. §§ 2201-02, and the

A

The Contracts Clause of the United States Constitution provides that "[n]o State shall . . . pass any . . . Law impairing the Obligation of Contracts." U.S. Const. art. I, § 10. The court's analysis of a purported violation of the Contracts Clause depends on whether the state is a party to the contract. *See United Healthcare Ins. Co. v. Davis*, 602 F.3d 618, 627 n.6 (5th Cir. 2010). TF-Harbor alleges that the Ordinance substantially impairs the lease arrangement it has with CNMK; it does not allege the existence of any contract between it and the City. Accordingly, the court applies the three-step analysis identified in *Energy Reserves Group, Inc. v. Kansas Power & Light Co.*, 459 U.S. 400 (1983).

"The threshold inquiry is 'whether the state law has, in fact, operated as a substantial impairment of a contractual relationship." *Energy Reserves*, 459 U.S. at 411 (quoting *Allied Structural Steel Co. v. Spannaus*, 438 U.S. 234, 244 (1978)). "This inquiry has three components: whether there is a contractual relationship, whether a change in law impairs that contractual relationship, and whether the impairment is substantial." *Gen. Motors Corp. v. Romein*, 503 U.S. 181, 186 (1992). Substantial impairment does not require "total destruction of contractual expectations," but "state regulation that restricts a party to gains

---

All Writs Act, 28 U.S.C. § 1651. *See* Compl. ¶¶ 250-54. Although neither statute confers subject matter jurisdiction on federal courts, the Fifth Circuit has suggested that at least the Declaratory Judgment Act "[may] provide a cause of action where . . . jurisdiction is well-established." *Planned Parenthood of Hous. & Se. Tex. v. Sanchez*, 403 F.3d 324, 334 n.47 (5th Cir. 2005). Because the court is assuming *arguendo* that § 1983 supplies the cause of action for TF-Harbor's Contracts Clause claim, it need not decide whether the Declaratory Judgment Act or the All Writs Act provides an independent cause of action.

it reasonably expected from the contract does not necessarily constitute a substantial impairment." *Energy Reserves*, 459 U.S. at 411 (citing *U.S. Trust Co. of N.Y. v. New Jersey*, 431 U.S. 1, 26-27 (1977); *id.* at 31; *City of El Paso v. Simmons*, 379 U.S. 497, 515 (1965)). To determine whether an impairment is substantial, the court should consider such factors as the parties' reasonable expectations and the degree to which the underlying subject matter was regulated before the formation of the contract. *See Allied Structural Steel*, 438 U.S. at 245; *United Healthcare*, 602 F.3d at 628; *see also Veix v. Sixth Ward Bldg. & Loan Ass'n of Newark*, 310 U.S. 32, 38 (1940). "The court should also consider what terms of the contract are affected and the duration of the effects." *Lipscomb v. Columbus Mun. Separate Sch. Dist.*, 269 F.3d 494, 504 (5th Cir. 2001). "[L]aws which subsist at the time and place of the making of a contract . . . enter into and form part of it." *United Healthcare*, 602 F.3d at 627 (quoting *U.S. Trust*, 431 U.S. at 19 n.17) (internal quotation marks omitted). "The scrutiny to which the court subjects the state law is proportional to the degree of impairment." *Lipscomb*, 269 F.3d at 505; *see also Energy Reserves*, 459 U.S. at 411; *Allied Structural Steel*, 438 U.S. at 245.

If the state regulation constitutes a substantial impairment, the court then determines whether there is a "significant and legitimate public purpose behind the regulation." *Energy Reserves*, 459 U.S. at 411 (citation omitted). In general, the remedying of a broad and general social or economic problem will constitute a significant and legitimate public purpose, but providing a benefit to a narrow group of people will not. *See Allied Structural Steel*, 438 U.S. at 247, 249; *see also Lipscomb*, 269 F.3d at 504-05. "The requirement of a

legitimate public purpose guarantees that the State is exercising its police power, rather than providing a benefit to special interests." *Energy Reserves*, 459 U.S. at 412.

If there is a significant and legitimate public purpose behind the regulation, "the next inquiry is whether the adjustment of 'the rights and responsibilities of contracting parties [is based] upon reasonable conditions and [is] of a character appropriate to the public purpose justifying [the legislation's] adoption.'" *Energy Reserves*, 459 U.S. at 412 (quoting *U.S. Trust*, 431 U.S. at 22). Where, as here, the state is not a contracting party,[8] "[a]s is customary in reviewing economic and social regulation, . . . courts properly defer to legislative judgment as to the necessity and reasonableness of a particular measure." *Id.* at 412-13 (quoting *U.S. Trust*, 431 U.S. at 22-23).

B

1

The City argues that the complaint fails to plausibly allege that the Ordinance operates as a substantial impairment of a contractual relationship. It contends that the complaint fails to allege that the Ordinance applies to Lot 5—the property that TF-Harbor actually owns—and that, even taking the well-pleaded allegations of the complaint as true, the Ordinance does not affect either TF-Harbor's or CNMK's ability to comply with the

---

[8]The standard is different when the state is a party to the contract. *See Energy Reserves*, 459 U.S. at 412 n.14; *see also United Healthcare*, 602 F.3d at 627 n.6. In that situation, a more exacting standard applies because "complete deference to a legislative assessment of reasonableness and necessity is not appropriate [where] the State's self-interest is at stake." *U.S. Trust*, 431 U.S. at 26.

Cinemark Lease.  TF-Harbor responds that the complaint plausibly pleads substantial impairment of the Cinemark Lease because it alleges that the Ordinance "resurrects" rights to develop Lot 7 in ways that would violate CNMK's signage, parking, and pedestrian-access rights, which extend to Lot 7.  TF-Harbor argues that this constitutes a substantial impairment of its contractual obligations to CNMK because the Cinemark Lease imposes an obligation on TF-Harbor, as landlord, to prevent interference with CNMK's signage, parking, and pedestrian-access rights.

2

The court holds that the complaint fails to plausibly allege that the Ordinance operates as a substantial impairment of a contractual relationship.  The first component of the substantial impairment inquiry is satisfied because the complaint alleges a contractual relationship between TF-Harbor and CNMK under the Cinemark Lease.  The court will assume *arguendo* that the second element is satisfied—that the Ordinance impairs this contractual relationship.  It concludes, however, that the third element is not met. The impairment (to the extent it exists at all) is insubstantial, because the parties to the Cinemark Lease could not have reasonably expected that the property in question would be free from zoning ordinances that permit commercial development on Lot 7, and the Ordinance does not change any of the terms in the Cinemark Lease.

TF-Harbor acknowledges that "the parties who executed the Cinemark Lease *did not* do so in a regulatory vacuum."  P. Br. 10.  It concedes that when the Cinemark Lease was first executed, the zoning ordinance in effect at the time "authorized broad commercial

- 24 -

development on Lot 7." *Id.* at 11.  In fact, the complaint explicitly alleges that "[f]or approximately *three decades* preceding execution of the [Cinemark] Lease, the [property] had been zoned by the City to allow extensive commercial development." Compl. ¶ 18. TF-Harbor argues that regardless whether the zoning ordinance that was in effect at the time the Cinemark Lease was executed permitted commercial development, it has a plausible Contracts Clause claim because MBD "forfeited" its right to pursue commercial development on Lot 7 by agreeing to the restrictive covenants in the Cinemark Lease, as reflected in the Memorandum of Lease.

The court concludes that this predicate is legally insufficient to plead a plausible Contracts Clause claim.  TF-Harbor's argument merely suggests that it has a plausible breach of contract or breach of restrictive covenants claim against Rockwall Rental, which acquired Lot 7 after the execution of the Cinemark Lease.  TF-Harbor acknowledges that the underlying subject matter was not only regulated, it was regulated in a manner that permitted extensive commercial development on Lot 7—the very activity that TF-Harbor characterizes as the cause of the substantial impairment.  *See* Compl. §§ 236-37 (alleging that Rockwall Rental's proposed parking garage will violate CNMK's parking rights, and that the Ordinance "therefore impairs TF-Harbor's obligations under the Cinemark Lease").  As a result, neither the original contracting parties nor TF-Harbor could have reasonably expected that Lot 7 would be free of zoning regulations that would permit commercial development on the property.

TF-Harbor contends that the Ordinance is materially different from the preexisting

ordinances because, although the preexisting ordinances contemplated extensive commercial development, none of the predecessor owners of Lot 7 threatened to pursue commercial development on the property. TF-Harbor maintains that it was not until the City enacted the Ordinance that Rockwall Rental threatened to develop Lot 7 in this manner. This argument is inapposite to the relevant inquiry, which is what the parties to the Cinemark Lease reasonably expected that the state's powers were with respect to Lot 7 at the time the contract was executed. *See Lipscomb*, 269 F.3d at 509 ("[The court] must repair then to the understanding of the trust at [the] time [the lease obligations were created] in order to assess what the parties to the original leases reasonably expected the State's duties and powers with respect to the land were."). The ordinance in effect at the time the Cinemark Lease was executed permitted the *same type* of commercial development. Whether predecessor owners "threatened" to develop Lot 7 does not change the fact that the City had previously zoned the property to allow for extensive commercial development. After the Ordinance was enacted, Lot 7 is still zoned for extensive commercial development. Whether a private party intends to exercise its right to pursue commercial development under the zoning regulation does not affect the nature of the regulation or the parties' reasonable expectations at the time the Cinemark Lease was executed. Should Rockwall Rental proceed with its plan to develop Lot 7, TF-Harbor may have a plausible breach of contract or breach of restrictive covenants claim against Rockwall Rental (a question the court does not decide), but it does not have a

plausible Contracts Clause claim.[9]  Any potential breach of contract or breach of restrictive covenants claim stems from a private contract, a deed restriction, or the like—none of which is affected by the Ordinance.  *See City of Gatesville*, 500 S.W.2d at 583; *Morton*, 304 S.W.2d at 763; *Farmer*, 289 S.W.2d at 355; *Spencer*, 146 S.W.2d at 825.  Because the Ordinance does not affect any of these rights or obligations, it does not substantially impair TF-Harbor's contractual relationship with CNMK.  *See, e.g., S. Terminal Corp. v. EPA*, 504 F.2d 646, 680 (1st Cir. 1974) ("An otherwise valid governmental regulation does not become impermissible merely because an object of the regulation is a party to some contracts."); *see also Two Tenn., LLC v. City of N. Little Rock, Ark.*, 2006 WL 2460926, at *2-3 (E.D. Ark. Aug. 23, 2006) (holding that substantial impairment requirement not met because zoning ordinance did not affect plaintiff's contractual relationship with third party); *Quality Refrigerated Servs., Inc. v. City of Spencer*, 908 F. Supp. 1471, 1492-93 (N.D. Iowa 1995) (holding that substantial impairment requirement not met where zoning ordinance regulated underlying

---

[9]Representative of TF-Harbor's position is its assertion that "[t]he significance of the historical zoning is that [MBD] *willingly* obligated itself, any successor 'Lessor' to Cinemark, any successor owner of Lot 5 where the Cinemark is located, and (by way of deed recordation) any successor owner of . . . Lot 7—to treat [CNMK's] leasehold rights as superior." P. Br. 11.  The court disagrees with the underlying premise of this contention. Neither the preexisting zoning ordinance nor the current Ordinance affects whether a private party violates its obligations under property or contract law, because the Ordinance does not justify or excuse a private party's violation of deed restrictions or its contractual obligations. If, as TF-Harbor suggests, Rockwall Rental acquired Lot 7 subject to certain deed restrictions or entered into a contract barring it from developing Lot 7 in particular ways, TF-Harbor can pursue a remedy under the law.  Neither the Ordinance nor the preexisting zoning regulations mentioned in the complaint affect TF-Harbor's rights or Rockwall Rental's obligations under these principles.

subject property but did not alter the rights and responsibilities of the parties to the contract); *Bannum, Inc. v. City of St. Charles, Mo.*, 1992 WL 521779, at *4 (E.D. Mo. Oct. 15, 1992) (holding that substantial impairment requirement not met where zoning ordinance "acted solely on the property" but "not on the terms of the contract").

In sum, construing the complaint in the light most favorable to TF-Harbor, accepting as true all well-pleaded factual allegations, and drawing all reasonable inferences in TF-Harbor's favor, the complaint does not plead factual content that would allow the court to draw the reasonable inference that enactment of the Ordinance violates the Contracts Clause. *See Iqbal*, 556 U.S. at 678.  At a minimum, the complaint fails to allege an impairment that is substantial.  "If the impairment is not substantial, there is no claim under the Contract[s] Clause."  *Lipscomb*, 269 F.3d at 505 (citing *Simmons*, 379 U.S. 497).  Accordingly, TF-Harbor's Contracts Clause claim is dismissed.[10]

V

The court now turns to defendants' alternative motions under Rule 12(b)(6) to dismiss TF-Harbor's Due Process Clause claim for failure to state a claim on which relief can be granted.

A

"Objections to vagueness under the Due Process Clause rest on the lack of notice, and hence may be overcome in any specific case where reasonable persons would know that their

---

[10]Because the court concludes that the complaint fails to plausibly allege a substantial impairment, it does not reach the second or third steps of the inquiry.

conduct is at risk." *Maynard v. Cartwright*, 486 U.S. 356, 361 (1988). "[V]agueness

challenges to statutes which do not involve First Amendment freedoms must be examined

in the light of the facts of the case at hand." *United States v. Powell*, 423 U.S. 87, 92 (1975)

(citation omitted). "[T]o be unconstitutionally vague, a statute must be 'impermissibly vague

in all its applications,' including its application to the party bringing the vagueness

challenge." *United States v. Clark*, 582 F.3d 607, 612-13 (5th Cir. 2009) (quoting *Vill. of*

*Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495 (1982), and citing

*Roark & Hardee LP v. City of Austin*, 522 F.3d 533, 546-47, 551 n.19 (5th Cir. 2008)). To

determine whether a statute is vague in all its applications, "a reviewing court should

examine the complainant's conduct before analyzing other hypothetical applications of the

law because a [party] who engages in some conduct that is clearly proscribed cannot

complain of the vagueness of the law as applied to the conduct of others." *Roark & Hardee*,

522 F.3d at 546 (citations and internal quotation marks omitted). A law is vague in all its

applications when "men of common intelligence must necessarily guess at its meaning."

*Clark*, 582 F.3d at 613 (citations and internal quotation marks omitted).

B

1

The City argues that the complaint fails to plausibly allege that the Ordinance is

unconstitutionally vague. It contends that TF-Harbor cannot possibly demonstrate that the

Ordinance is vague in all its applications, and that the Ordinance gives people of ordinary

intelligence a reasonable opportunity to know what is prohibited by approving a development

plan and providing that development occur according to specified provisions of other zoning ordinances and the Code.  TF-Harbor responds that the complaint plausibly alleges that the Ordinance is unconstitutionally vague in five respects: (1) the Ordinance provides that development of the property "shall generally conform" to that depicted in the visual rendering incorporated as an exhibit and "generally conform" is a vague standard; (2) the visual rendering is itself imprecise; (3) § 5 of the Ordinance does not clearly define conduct that would violate the Ordinance; (4) the Ordinance encourages arbitrary and erratic enforcement and commits too much discretion to the City; and (5) the Ordinance fails to give fair notice, fails to require a state of mind for the criminal offense, and fails to require specific intent.

2

In analyzing TF-Harbor's facial challenge to the Ordinance,[11] the court begins by reviewing TF-Harbor's alleged conduct.  *See Clark*, 582 F.3d at 612; *Roark & Hardee*, 522 F.3d at 546.  Construing the complaint in the light most favorable to TF-Harbor, accepting as true all well-pleaded factual allegations, and drawing all reasonable inferences in TF-Harbor's favor, the only way in which the Ordinance applies to TF-Harbor is that TF-Harbor is unable to determine whether a re-configuration of the development that *would* protect CNMK's leasehold rights on Lot 7 would be deemed by the City to "generally be in accordance with" the Ordinance, because the visual rendering is imprecise, "generally" is a

---

[11]TF-Harbor concedes that its vagueness challenge is a facial challenge, not an as-applied challenge.  *See* P. Br. 18.

vague standard, and the Ordinance commits too much discretion to the City to approve building permits.  *See* Compl. ¶ 263.  In other words, even viewing the complaint in the light most favorable to TF-Harbor, the allegations that the Ordinance is unconstitutionally vague because it fails to require a state of mind for the criminal offense and because it fails to require specific intent do not even refer to conduct on the part of TF-Harbor, since the Ordinance regulates commercial development on Lot 7, and TF-Harbor does not own any property on Lot 7.  As a result, the complaint does not allege that TF-Harbor would be the subject of enforcement under the Ordinance, and these allegations therefore fail to plead factual content that would permit the court to draw the reasonable inference that the Ordinance is unconstitutionally vague on these grounds.  *See Iqbal*, 556 U.S. at 678. Accordingly, the only possible basis for the court to conclude that the Ordinance is unconstitutionally vague is the claim that the Ordinance does not make clear whether future development plans submitted by Rockwall Rental would be approved by the City.

The court holds that the complaint fails to plausibly allege that the Ordinance is unconstitutionally vague in its application to TF-Harbor, much less in all its applications. The court essentially disagrees with TF-Harbor's position because it cannot accept TF-Harbor's characterization of the Ordinance.   TF-Harbor appears to maintain that the Ordinance is unconstitutionally vague because it does not establish, in particularized detail, the exact specifications of the buildings that will be constructed on Lot 7, and that this lack of specificity makes the Ordinance unconstitutional.  The court disagrees. The Ordinance clearly establishes a set of *procedural*, as opposed to *substantive*, requirements for future

development on Lot 7, and does not purport to regulate the exact specifications of a finalized development plan.  It provides that the developer must submit and seek approval of a more detailed site plan, submit and seek approval of a subdivision plat, ensure that the architectural design of all buildings within certain subdistricts conforms with other specified zoning ordinances and with the Code, obtain approval from the Architectural Review Board for the designs of all buildings, ensure that pedestrian access ways comply with a pedestrian access easement, and demonstrate that there is an appropriate number of parking spaces within the development.  And it states that several of these procedural requirements must be satisfied before a building permit will be issued.  It does *not* purport to regulate the exact specifications of a finalized development plan.  This lack of specificity does not create a constitutional infirmity because the Ordinance is not designed to regulate the final development product.  It is merely designed to regulate the ensuing development *process* should Rockwall Rental proceed with its plan to develop Lot 7.[12]

In light of the Ordinance's limited purpose, the regulation's use of the word "generally" does not render the law unconstitutionally vague.  In assessing a void-for-vagueness challenge, "no more than a reasonable degree of certainty can be demanded." *Boyce Motor Lines v. United States*, 342 U.S. 337, 340 (1952).  This "requirement of

---

[12]That the Ordinance merely establishes a set of procedural requirements that must be satisfied should Rockwall Rental proceed with its plan to develop Lot 7 reinforces the court's conclusion that TF-Harbor does not have standing to pursue its Due Process Clause claim. *See supra* § III(C).  Rockwall Rental could, for example, choose not to proceed with its development plan, or, alternatively, it could choose to proceed but decide to submit a site plan that does not include buildings that would infringe CNMK's leasehold rights.

reasonable certainty does not preclude the use of ordinary terms to express ideas which find adequate interpretation in common usage and understanding." *Id.* The use of the word "generally" satisfies the reasonable certainty requirement in this context. The word indicates that commercial development occurring on Lot 7 must conform with the procedural requirements established by the Ordinance, but that minor deviations from the early-stage development proposal adopted by the Ordinance will be permissible, assuming the other procedural requirements are satisfied. Those other requirements are clearly specified in § 3 of the Ordinance (summarized above). The term "generally" merely provides a degree of flexibility for adjustments to the development plan that would occur at later stages of the approval and construction process. This type of flexibility does not violate the Due Process Clause because "[t]he regulatory provisions are 'sufficiently explicit to inform those who are subject to it what conduct on their part will render them liable to its penalties.'" *Harper v. Lindsay*, 616 F.2d 849, 857 (5th Cir. 1980) (quoting *Connally v. Gen. Const. Co.*, 269 U.S. 385, 391 (1926)). The Ordinance plainly provides that anyone who begins construction without complying with the procedural prerequisites set forth in § 3 or deviates substantially from the proposed development scheme will be fined. That the Ordinance does not precisely define specific construction details of the buildings and the like does not make it unconstitutional, because the Ordinance is not intended to regulate the exact specifications of a finalized development plan. It is intended merely to create a set of procedural requirements that must be satisfied as the development process evolves.

Similarly, the fact that the one-page visual rendering is somewhat imprecise also does

not create a constitutional infirmity.  The incorporated exhibit is clearly an early-stage model depiction of the proposed development scheme.  It is not intended to be an architectural blueprint for the layout of any of the buildings depicted therein.  By incorporating the exhibit in the Ordinance, the regulation merely contemplates that development on Lot 7 will approximately resemble the scheme set forth in the visual rendering, and that, as the development process progresses, Rockwall Rental will be required to propose a more detailed site plan, secure approval from the Architectural Review Board for particular construction designs, and secure building permits before beginning construction.  The exhibit therefore represents only the earliest step in a process of regulatory oversight by the City.  That the model is not a literal blueprint for commercial development on Lot 7 does not make the Ordinance unconstitutionally vague.  No person of ordinary intelligence could believe that the one-page visual rendering was intended to serve as a final construction plan for the development project.

Finally, the complaint's conclusory assertions that the Ordinance "[fails] to give fair notice," Compl. ¶ 259, fails to establish a standard that is "sufficiently specific to caution in what way the Ordinance might be violated," *id.* ¶ 261, "encourages arbitrary and erratic enforcement, commits too much discretion to law enforcement, and criminalizes acts which by modern standards are normally innocent," *id.* ¶ 262, are insufficient to plausibly plead a violation of the Due Process Clause.  *See Iqbal*, 556 U.S. at 678.  None of these assertions is supported by factual content that would permit the court to draw the reasonable inference that the Ordinance is unconstitutionally vague on these grounds.  TF-Harbor's conclusory

assertions in its response brief do not cure these pleading deficiencies.

Because the Ordinance gives persons of ordinary intelligence a reasonable opportunity to know what is prohibited, and TF-Harbor has not alleged that it is a target or potential violator of the Ordinance, the court holds that, even viewing the complaint in the light most favorable to TF-Harbor and drawing all reasonable inferences in its favor, TF-Harbor has failed to plead a plausible claim that the Ordinance is unconstitutionally vague. Accordingly, TF-Harbor's Due Process Clause claim is dismissed.

VI

The court now considers whether it should exercise supplemental jurisdiction over the pendent state-law claims given that it has granted defendants' motions to dismiss as to the federal-law claims.

In addition to its federal-law claims, TF-Harbor asserts state-law claims against the City and Rockwall Rental. Although this court can exercise supplemental jurisdiction over the state-law claims under 28 U.S.C. § 1367(a), in this circuit "[t]he general rule is that a court should decline to exercise jurisdiction over remaining state-law claims when all federal-law claims are eliminated before trial." *Brookshire Bros. Holding, Inc. v. Dayco Prods., Inc.*, 554 F.3d 595, 602 (5th Cir. 2009). Having dismissed TF-Harbor's federal-law claims, the court in its discretion declines to exercise supplemental jurisdiction over its state-law claims. Accordingly, the court dismisses TF-Harbor's state-law claims without prejudice.

VII

Finally, the court turns to TF-Harbor's motion for a preliminary injunction.

A

To obtain a preliminary injunction, TF-Harbor must establish the following: (1) a substantial likelihood that it will prevail on the merits; (2) a substantial threat that it will suffer irreparable injury if the injunction is not granted; (3) that the threatened injury outweighs the threatened harm the injunction may do to defendants; and (4) that granting the preliminary injunction will not disserve the public interest. *E.g., Jones v. Bush*, 122 F.Supp.2d 713, 718 (N.D. Tex. 2000) (Fitzwater, J.), *aff'd*, 244 F.3d 134 (5th Cir. 2000) (per curiam) (unpublished table decision). TF-Harbor must satisfy all four requirements. "A preliminary injunction 'is an extraordinary and drastic remedy, not to be granted routinely, but only when the movant, by a clear showing, carries the burden of persuasion.'" *Id.* (quoting *White v. Carlucci*, 862 F.2d 1209, 1211 (5th Cir. 1989)). "The decision to grant a preliminary injunction 'is to be treated as the exception rather than the rule.'" *Id.* (quoting *Miss. Power & Light Co. v. United Gas Pipe Line Co.*, 760 F.2d 618, 621 (5th Cir. 1985) (stating that movant must "clearly carr[y] the burden of persuasion")).

B

Because the court has concluded that TF-Harbor's federal-law claims should be dismissed, TF-Harbor has failed to show a substantial likelihood that it will prevail on the merits of its federal-law claims. And because the court has declined to exercise supplemental jurisdiction over TF-Harbor's pendent state-law claims, these claims cannot form the basis

for a preliminary injunction.   Accordingly, the court denies TF-Harbor's motion for preliminary injunction.  This denial is without prejudice insofar as the motion is based on state law and can be reurged in state court.[13]

\* \* \*

Accordingly, the court grants defendants' Rule 12(b)(1) motions to dismiss plaintiff's federal-law claims for lack of subject matter jurisdiction, and it dismisses these claims without prejudice.[14]   The court also grants defendants' alternative motions to dismiss plaintiff's federal-law claims under Rule 12(b)(6) for failure to state a claim on which relief can be granted.[15]   The court declines to exercise supplemental jurisdiction over plaintiff's state-law claims, and it dismisses these claims without prejudice to their being reurged in

_____

[13]The court expresses no view on whether TF-Harbor is entitled to a preliminary injunction under state law.

[14]A dismissal for lack of subject matter jurisdiction based on the plaintiff's lack of standing is a dismissal *without* prejudice.  *See, e.g., Sepulvado v. La. Bd. of Pardons & Parole*, 114 Fed. Appx. 620, 621 (5th Cir. 2004) (per curiam) ("The district court did not specify the ground on which it based its decision, or whether the dismissal was with prejudice.  Dismissal for lack of subject-matter jurisdiction, pursuant to Rule 12(b)(1), is without prejudice; dismissal for failure to state a claim, pursuant to Rule 12(b)(6), is with prejudice.").

[15]Were the court to rely on this as the primary rather than alternative basis for dismissal, the dismissal of plaintiff's federal-law claims would be with prejudice.  *See supra* note 14.

state court.  The court denies plaintiff's motion for preliminary injunction.

**SO ORDERED**.

May 9, 2014.

_____
SIDNEY A. FITZWATER
CHIEF JUDGE